Case number 23-1897, Gerard Segler v. City of Detroit MI et al. Arguments not to exceed 15 minutes per side. Mr. Becker, you may proceed for the appellate. Thank you, Frank G. Becker, appearing on behalf of the appellant, Gerald Segler, and I would like to reserve five minutes for rebuttal. This is, I believe, a very pure and interesting case, to say the least. It, I think, affects every aspect of our Constitution, every aspect of the separation of powers. In this case, there was an attempt by somebody in the, as the police chief of the City of Detroit, to make it appear that an investigation was making progress, to make it appear as though he was doing something effective to protect the community, after there was some outcry because of a supposed random shooting in a neighborhood. Well, as usually, as you know from watching Dateline, usually the truth is very close to home. So what actually happened was the grandson of the homeowner was firing a pistol into his grandmother's home, the home where he also lived. And that was the full result of this. There's no claim here, ever. There was no evidence here, ever, that my client, Mr. Segler, had anything to do with the shooting. His violation was openly carrying, as a U.S. Army veteran, an AR-15, which is the basic weapon used in the military. It's not an assault rifle. It's not a rapid fire. So what is your 1983 claim exactly here? Our claim is that if, in the City of Detroit at that time, if the highest executive can get on the television, get on reports in newspapers, and claim that my client was not only a person of interest, he was more than a person of interest, and in the tape, which was transcribed per the ruse, also referred to as a suspect, and we need to prod him to come in, citizens come, get this guy in, to further our investigation. And so-called, his photo, which was openly displayed, was from the surveillance detectives, when actually they took, and this is very important, they took his own Facebook page, and they used his Facebook page as the, that's the picture that he posted for the public, and they made it seem as though that was somewhere in the scene. What did, so I understand that you have a defamation claim, perhaps, under state law, but under the Supreme Court's case law, you need the plus. Right. So you've been talking about how your client has been defamed, potentially, but that's not enough. What is your plus? Well, there's more than that. There's psychological injury, and the psychological injury is that this man, he used to have his own building company, and he wanted to stay away from society. He's away from norms. He doesn't have an ID. When we argued in federal court, in the district court, it took 20 minutes to get in, because he doesn't have a photo ID. The court had to grant him special permission, and compared his photo to the photo in the case, to say yes, he could come in, to the federal courthouse. He had recurring nightmares because of this, and he was actually physically beaten. So certainly, there's sufficient damages. But that damages is different than the actual constitutional claim. Yes. As I understand the Supreme Court's case law, correct me if you think that I am wrong, the Supreme Court's case law suggests that you have to have been coerced in a way, by law, that is in addition to any harm to your reputation. And so it could be they fire you based on false allegations, defamation, and so that's taking your job away. The case that Paul distinguished, they legally prohibited you from buying alcohol. You were just alleging damages. I'm not certain you were alleging any other types of government coercion, aside from holding your client's picture up. Yes, we are. And here's the point. What is his job? His job is to repair houses. He lives in these abandoned houses, and this is where his deposition was taken. This is where we had hearings in court. I would go to the house. This is where I got the answers to interrogatories, wherever he was working. And these are houses that the owners wanted to get the work done inexpensively. You know, you could call a repairman now and say, how much does it cost for drywall? And you would be shocked. How much does it cost to build a bathroom? Here we have an expert builder that takes time, and he was carrying the gun. One reason he was carrying the gun is because of dogs. So if he had to shoot a dog, he had to shoot a dog because abandoned dogs, they get together, they form packs, and they become very aggressive. Now, there's a case from your own court, the Wurtzbach versus Jones-Kelley case at 675 F. 580, that a threatening governmental investigation would deter an ordinary person from engaging in protective conduct. So this is very important to look at this from a proper perspective. And I didn't check everybody's political affiliation. I'm beyond that now. So if it's considered that you do have the right to carry, open carry, a weapon, a gun, and I think that was established in Bruin, if that's a constitutional right, is that somehow different? Should it be explained? What if I was carrying a cross? And when there was a police investigation, the only evidence, because ask counsel, what evidence was there that he was involved? There's a tape that they had of a big, heavy-set black person. My guy is, as you might expect from somebody that's basically homeless, is as thin as a rail. He's not black. He's white. Could he be a person of interest because he could have observed somebody else doing the wrongdoing here? No, because he was more than a person of interest. He was a suspect, and he had to come forward. So the key then, you're saying, is that it would be okay for the police chief to say he was a person of interest, but it's the added statement that he was more than a person of interest. And did the police chief say he was a suspect? Yes. He kept on saying it. He called a special news conference for this. So look at it in this context. My guy walks the neighborhood. He knows the police officers, and this came out in his deposition. And they would say, hey, Gerald, what's going on? They would call him A.R. Joe. His middle name is Joseph. So they would talk to him. We're not in here because the police talked to him. We're in here because he had to retain a lawyer who is one of these people that builds these houses and gets real cheap rates. He says, hey, put these windows on. How much do you want? Well, I'll do it for $300 when they call wall-side windows and they might want $10,000 for labor. So the point is that he had to retain counsel, and he paid for that. They had to go in to police headquarters. They were questioned. And this caused him real harm. And what I can't get over philosophically or theoretically, and I'll never get over regardless, and this case is going to go higher if we don't get the right result here. And I don't have anyone behind me. It's me. But what I don't understand is when the only evidence is that the guy is carrying a rifle, there's nothing else. There's nothing else. He didn't do anything else. He didn't cause any disturbance. He didn't yell. No one implicated him. And this all came out. And when the attorney was speaking at the time, she didn't speak to the chief of police. She spoke to the underlings who supposedly were in the investigation. And what they said and what my client said, and these are party admissions because the city of Detroit is a defendant, and this is unrebutted. What did they tell her? Hey, we don't know why he brought him in. We know he's not the guy. We know he's not the guy. So this is a pure, pure case. So please don't. I'm not sure what your signal is, but according to our timer, you are now over your time. If you want to use your rebuttal time now, you may, but otherwise we should hear from you. No, time flies when you're having fun. It didn't seem like 10 minutes. Because we have a remote later. No, I understand. I appreciate your honor. I think it's there. Thank you. Good morning. Morning. My name is Alfred Asher. I represent the appellees in this case, former city of Detroit police chief James Craig and the city of Detroit. May it please the court. The district court properly granted summary judgment in favor of defendants. Chief Craig is entitled to qualified immunity because he did not violate clearly established constitutional rights of plaintiff and plaintiff failed to establish a protected liberty or property interest under the stigma plus test. The city of Detroit is entitled to judgment as a matter of law because plaintiff failed to prove that the city had a policy or practice that was the moving force behind the alleged constitutional deprivation. Now, the Supreme Court in Paul v. Davis set forth this stigma plus test. They said there has to be government action that both damaged the reputation of the plaintiff and deprived him of a right previously held under state law. Plaintiff fails to provide any legal authority or any published cases representing recognizing a liberty or property interest and not being labeled as a person of interest. Now, your opponent is arguing that he was labeled as more than a person. Sure. So in response to that, even if he was labeled as a suspect, he doesn't cite any cases where the courts have recognized that being labeled as a suspect has a protected property or liberty interest. And even so, in this case, he explicitly said during the hearing that he was not a suspect. In fact, Chief Craig said that he could be a suspect. But at this time, they weren't calling him a suspect. Was there ever a statement by the police chief that he was a suspect? Not conclusively. At best, Chief Craig said that the person of interest and suspect could be the same, but he wasn't ready to make that statement or confirm that at the time of the press conference. So he does have allegations that Police Chief Craig's comments led him to being physically harmed. So he has a liberty interest in his bodily integrity, for sure. Why isn't it enough to say if the government's defamation leads private actors to harm the plaintiff, that that is sufficient to satisfy the stigma clause? Well, in this case, there's absolutely no evidence in the record that any of these alleged private actors even saw the press conference or that they acted pursuant to the press conference. It's merely speculative by plaintiffs that they were motivated by this press conference, but there's no evidence to support that. So take a hypothetical, then, following Judge Markey's question. If we have a situation – I mean, I think you can agree by holding up somebody's photo at a major press conference on an event that's of a lot of community interest, right? And saying, this could be the suspect, you know, it's going to arouse a lot of questions. And people jump to conclusions. I think you could say that's pretty foreseeable. What if a family member of one of the victims went and retaliated and harmed the person after seeing that this could be the suspect? So take the facts a little differently from here. Would that be enough to satisfy the test? I think that that may be enough. I think that that would be a different situation. You have a closer causal relationship where you can say, well, this person's related to one of the victims. And because there was a shooting, that their actions were motivated. But I don't think we have enough evidence in this case to say that any of the alleged private actors were motivated by anything Chief Craig said in the press conference. Then your case hinges on causation. And you would concede that if a defamation claim causes a plaintiff to lose a job or get beat up, even if those are independent actions of private actors, that that type of harm would be enough to satisfy the stigma plus test? I think that if there was enough proof of causation, so I do believe it hinges on causation.  Do you have a case? I would have thought perhaps a better reading of Paul is that the government itself had to have legally coerced the lack of a property right or a liberty interest. So if the government itself was the one who engaged in the assault, or if the government itself said you have to fire this person as a matter of government coercion, that would be enough. I think that is correct. For instance, in the Pembauer case where the county prosecutor, the Supreme Court found that a single decision of the prosecutor under those circumstances was enough to apply a Monell liability where the county prosecutor had specifically directed the constitutional deprivation. I don't think that that's the case here. And I don't think that it was foreseeable that anything Craig said in this conference would lead these unknown, unnamed private actors to commit any torts or alleged torts against plaintiff. He identified him as a person who is known to open carry. That was merely an identifying trait. And I think that the way you present yourself to the world is how people identify you. It's no different from a person with blue hair being identified as the blue haired guy sitting in a chair. And this is further evidenced by the plaintiff's nickname. He was known as AR Joe because the people in the neighborhood identified him by carrying the assault style weapon in an open carry manner. At the time that the police chief made this statement that he was a suspect or that he was a person of interest and possibly a suspect, did the police chief or any of the police officers have any information about who actually was committing the crime here? So I'm unable to answer that because there was no discovery conducted. There was no depositions taken of Chief Craig as to what he knew or didn't know at the time. No depositions or document requests from police officers as to what they knew at the time. So I can only go off of what was presented in the press conference. So this was a summary judgment though? Yes, this was a summary judgment. So just moving forward. So did the city and the individual defendants produce any evidence to support their position that summary judgment should be granted? Well, we produced the news, the press conference, the transcript. We produced plaintiff's responses to written discovery requests. So we did produce evidence in support of our position. And we also produced charter provisions from the Detroit City Charter saying that the police chief is not a policymaker for the city of Detroit and thus cannot be the basis of a Monell claim. And this court specifically has held that in the Board of – sorry, what case was that? In Berry v. City of Detroit, this court explicitly held that pursuant to the City of Detroit Charter, the Board of Police Commissioners is vested with the power to make policy for the City of Detroit Police Department, not the Chief of Police. So if I'm understanding you, Counsel, there's nothing in the record as to why the former police chief identified the plaintiff as a person of interest? That is correct. However, there is a key phrase that he used during the press conference. He said that there were additional reasons as to why a plaintiff was a person of interest, that somebody he wanted to talk to regarding the situation. However, those additional reasons weren't discovered. So the only evidentiary material that we have as to what was said and what the reasons were is the press conference and the transcript of the press conference? That's correct. Anything else? And then you were saying there were admissions – response to requests for admissions. Yes, that's correct. There was a response to requests to admissions. So just written discovery and the press conference itself. So that is correct. Did the police chief respond to requests for admission? There were no requests for admissions. From that side, from your side. Yes, correct. There was no request to admissions, no depositions taken. Anything, when we talk about what Chief Craig knew or what his subjective intent was, is purely speculative because there is no evidence in the record to provide support for that. The plaintiff, although he alleges that it was based upon his open carry, as I said earlier, that was merely an identifying trait. It wasn't solely because he open carried a weapon. Can I ask you, though, on the plaintiff's Second Amendment claim, it's not obvious to me. It seems quite straightforward that the same type of First Amendment three-part test, you engage in protected conduct, an adverse action is taken against you, and there's a causal connection between the two. That's well established in our First Amendment speech cases, that that can violate the First Amendment. Is there any plausible reason why that test would not apply to the Second Amendment? So you engage in conduct that the Second Amendment protects, and the government takes an adverse action. Say you're a public employee, and the government sees you walking around with a handgun, and it's constitutionally protected. If they fire you for that, so there's a causal connection. Is there any reason why that same exact analysis wouldn't apply here? I think that's a great question, Your Honor, and the answer to that is that the First Amendment, that right to freedom of expression is clearly established. In this case, plaintiff is talking strictly about the manner of carry, and that right has not been established clearly. I recognize you're relying on qualified immunity, and that may be a pretty good argument, although there's an exception if it seems like an obvious case or something. So what I'm trying to get at is why wouldn't the First Amendment test obviously extend to the Second Amendment? I just don't see any reason why it wouldn't. Well, I think that the first thing that you have to get to is that you engaged in protected conduct. And so our position is that because there hasn't been a clearly established constitutional right to open carry specifically, that because his whole case is based upon that he open carried and that that was the protected conduct, I think that kind of precludes the same test. You would agree that the three-part test would apply, but there's an open question about whether his conduct was protected. Yes. But why wouldn't – would Bruin solve that? Didn't Bruin essentially say you have some amount of rights to carry in public? To be honest, Your Honor, I'm not familiar with Bruin. However, because it's strictly open carry, there are some states in this country that explicitly ban open carry. So you can't have a clearly established constitutional right if certain states are able to completely ban it. There's no causal connection between – sorry, go back. Plaintiff hasn't demonstrated any alteration of a previously held right or status. There was no arrest or seizure. He concedes that he voluntarily participated in the police interview. He was still free to open carry. If he could open carry Friday and the press conference was Monday, he still could open carry on Wednesday. There was no change. He's claiming that various negative things happened to him as a result, that he was beaten by some private citizen and that he lost jobs. So he is claiming consequential effects. Query whether those are just relevant to damages or are they showing the stigma plus. I don't believe that they show the stigma plus. He's stating damages or alleging damages, but he needs to show a deprivation of a right. And because you didn't have a right not to be assaulted by private actors before, he didn't lose that right as a result of Chief Craig's statements made during the press conference. There's no causal connection that's been demonstrated between the alleged deprivation and the press conference. The only evidence, if any, of any harm is plaintiff's own self-serving statements. Well, but doesn't everyone make self-serving statements? Well, sure, but. Essentially any witness. Sure, but I mean, we requested medical records. We didn't get those, a proof of injury. He was a private employee. He wasn't employed by the government or anything. And this court has held in, I think it's cut shell v. Sunderquist, that there is no right to private employment. So when he says that his private contracting work was affected, I don't think that's enough to satisfy the stigma plus test. Your Honors, I see my time is starting to expire. Appellees respectfully request that this court affirm the district court's granting of summary judgment on all claims and preserve the ability of police to solicit help from the public in an ongoing investigation. Thank you. Thank you. It was the plaintiff that produced the evidence, the news conference. We produced the news conference. Alfred's an honorable person, he probably forgot, but we produced the news conference. But that doesn't show motive of the police chief. Yes, they claimed that they did not have it, that it did not exist. And we produced it. And not only did we produce it, we proved that it still was on the Detroit Police Department Facebook page. We also proved, here's the full photo from his Facebook page. And it shows that there was some sort of work done. The walls are not uniform. This is where he was doing work, and it has a little placard. This was cropped, so it looks like he was like peering at something. And it was called, you know, from surveillance. He was more than a suspect. And there's a lot of ironies in this case. I just want to point out, to give some stimulus to the court, that I am on the right track, even though I might not look like I should be or whatever. So counsel didn't say anything. He said he doesn't know Bruin. Well, how can you argue this case if you don't know Bruin? Secondly, because that gives the Constitution the right. What is your best argument, though? Our best argument is this. Well, let me finish my question. Okay, go ahead. What is your best argument for why the Second Amendment right is clearly established? Because I don't think there's any case that I'm aware of that has ever applied the three-part test that is in the free speech context, that you have protected conduct, that there's an adverse action, and that there's causation between the two. I'm not certain of a case that has extended that to the Second Amendment. Are you aware of a case? And if not, why isn't the easy solution to say this wasn't clearly established and not reach the merits? Well, I'm looking at this not really as just in terms of the right to carry. That's the constitutional right. What I'm looking at, basically, and it's a question of empathy for my client that just wanted to be left alone. What I'm looking at is that you have the executive arm, the highest official, his own personal actions, his own setting of policy punishing my client by publicly branding him as a criminal. And there's case law. But he wasn't branded as a criminal. He was labeled as a person of interest, possibly a suspect. Right, who had to come in because he had to be... But don't we want police officers to be able to solicit for people to come in who might have been witnesses to a grievous crime and to provide information and to ask for such people to come in? There's no evidence that anyone thought that he saw anything. That's never come out. It wasn't even argued here. The only thing we have is that he was called more than a suspect. Not more than a suspect. More than a person of interest. And he was actually labeled a suspect and that he had to be prodded to come in. Let me ask you this in terms of just question. Now, my client, he's going to remember this and he does remember this. He will remember this for the rest of his life. This is one reason why he still is living is because he believes in this case. He's standing up for his rights. Now let me ask all of you, I don't know if you guys ever ran for office or anything, but you can imagine the harm if your picture is branded as being the person, a suspect, and it's out there. Do you think you'll ever forget this? And we think that this is de minimis case? Now, we have with. . . You do have a defamation case. Right. Well, listen. What was Wisconsin v. Constanew about? You know what that was about? That was about allowing somebody to drink in a bar. And that was held. . . There's constitutional rights. Paul V. Davis, if you really research this, is not considered the best moment of the United States Supreme Court anyway. But Wisconsin v. Constanew was about that. It's because this is something that does affect us. I mean, what do we have? I mean, we have our reputation. So if you were. . . You know, if you had an argument today and the day before, you're implicated in some criminal investigation without any basis, without saying, oh, so-and-so. I saw Judge Murphy, and he was near this house. No one said this about Mr. Sagler. And you're coming in here. . . Do you think any of you would ever forget this for the rest of your life? And let me ask you this. If you have a little. . . Like, if you're a prisoner, and you get bopped over the head, and you don't have any medical treatment, and that's considered to be sufficient to have a constitutional claim. So why are we playing games with this? Why are we trying to. . . I mean, this is fundamental. I think your time has expired again. Well, I guess I said what I wanted to say. Can I say one more thing? Can I? One sentence. Well, I don't know if it's one sentence. I guess I could use commas. Just pretend I'm using a comma. So back in 1976, you know, I argued a case dealing with the same issue. And it was about a prosecutor in Michigan, Wayne County prosecutor. And he labeled somebody that was vindicated. Lee Dell Walker was vindicated. And there was a motion by then state legislator Coleman Young, who became the mayor of Detroit for many years, to compensate him. And William Cahalan said, don't compensate him. He's a murderer, even though the courts had vindicated him. Well, eventually we got vindicated, but not in this court. Thank you. Let's rectify that. That's also a coincidence. Thank you for your argument on both sides. And the case will be submitted.